**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ELIZABETH WISEMAN, | * | |
| Plaintiff, | * | |
| v. | | Civil Action No: 1:16-cv-04030-SAG |
| | * | |
| WAL-MART STORES, INC., *et al.,* | * | |
| Defendants. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff, Elizabeth Wiseman, by and through her attorneys, Scarlett M. Corso and Gilman & Bedigian, LLC, pursuant to Fed. R. Civ. Proc. 56 and Local Rule 105, hereby files this Response in Opposition to and against Defendants, Wal-Mart Stores, Inc. and Wal-Mart Stores East, LP's Motion for Summary Judgment (the "Motion") and in support thereof, states as follows:

## INTRODUCTION

The above referenced action is premised on the tort of premises liability and negligence and involves Plaintiff suing two Defendants, Wal-Mart Stores, Inc. and Wal-Mart Stores East, LP (collectively, "Defendants" or "Walmart"). Plaintiff alleges that on June 28, 2014, she was a business invitee at the Walmart store owned and operated by the Defendants located at 9750 Reisterstown Road in Owings Mills, Maryland (Store #2290) (the "Store") at approximately 2:30pm. *See* Complaint at ¶2. As she proceeded around the end of the detergent aisle in the Store (the "Premises"), she slipped and fell on an unknown liquid substance, sustaining severe injuries as a result (the "Occurrence"). *See id.* at ¶4. Plaintiff contends that Defendants own, operate, and manage the Store and Premises, that Defendants owed the Plaintiff a duty to maintain the

Premises in a reasonably safe condition and to correct dangerous or defective conditions which they knew or by exercise of reasonable care should have known of, and Defendants negligently failed to keep the Premises in a safe condition and failed to warn Plaintiff of the hazardous condition on the Premises. *See Id.* at ¶¶ 7-17.

In their Motion, Defendants seek summary judgment arguing that Plaintiff cannot prove Defendants had any actual or constructive knowledge of the dangerous or defective condition and even if she could, Plaintiff assumed the risk of her injuries and was contributorily negligent. *See* Defendants' Motion at pp. 6, 12. However, as fully set forth herein, none of these arguments are availing and Defendants' Motion should be denied.

## UNDISPUTED FACTS
*Plaintiff's Discovery Responses to Defendants*

In the Defendants' discovery requests, it asked the Plaintiff to describe the nature of the Occurrence. In response, Plaintiff stated, in part:

> On June 28, 2014, Plaintiff and her granddaughter, Ayanna Wiseman, arrived at the Walmart store owned and operated by the Defendants located at 9750 Reisterstown Road in Owings Mills, Maryland (Store #2290) (the "Store") at approximately 2:30pm. They shopped at the store for about an hour prior to the Occurrence and utilized a shopping cart while they shopped. As Plaintiff approached the end of the detergent aisle, she suddenly slipped and fell in a dark liquid on the floor. There were no warning signs of the dangerous and hazardous condition caused by the dark liquid on the floor. Ayanna Wiseman ((443) 415-7301; 5723 Nasco Place, Baltimore, Maryland 21239) was not with the Plaintiff when she fell, but heard the Plaintiff scream as she fell. Another Walmart customer, Gloria Pleet ((410) 764-0167; 3803 Bancroft Road, Baltimore, Maryland 21215) was in the aisle that Plaintiff was turning into and witnessed the Occurrence. Ms. Pleet approached the Plaintiff after she fell and helped the Plaintiff up off the floor. Plaintiff did not see the dark liquid on the floor before she fell and does not know how long it had been on the floor prior to the Occurrence.

*See* Plaintiff's Answers to Defendants' Interrogatories, attached hereto as Exhibit A, at No. 2.

With respect to the Plaintiff's allegations attributing notice of the dark liquid on the floor to the Defendants (the "Initial Spill"), Plaintiff stated, "Defendants should have been aware of the existence of the dark liquid on the floor prior to the Occurrence [and] [u]pon information and belief, Defendants possess video surveillance of the Occurrence, which will substantiate Plaintiff's allegation of notice in this regard." (Ex. A, at No. 25). With her discovery responses, Plaintiff produced a photograph of the Initial Spill on the floor in which she slipped, which was taken by her son, Eric Wiseman. (*See* Plaintiff's Photograph, attached hereto as Exhibit B).

*Defendants' Discovery Responses to Plaintiff*

In their Answers to Plaintiff's Interrogatories, Defendants relied upon the video surveillance to describe the Occurrence, noting that "Plaintiff was walking through an aisle of the Walmart store when she proceeded by the endcap of the aisle and she slipped and fell on an unknown liquid which Plaintiff said she believed to be soda…. (*See* Excerpts of Defendants' Answers to Plaintiff's Interrogatories, attached hereto as Exhibit C, at No. 18). Defendants indicated that a "zone manager," "Ms. Tibbs," "arrived on scene shortly after the Plaintiff's occurrence to assist Plaintiff [and then] Mr. Cunningham, assistant manager, and Ms. Kennedy, asset protection associate, responded to the scene shortly after Ms. Tibbs to take a report of the occurrence and to take photographs." (*See* Ex. C, at No. 5). Defendants claimed they had no knowledge of the Initial Spill on the floor prior to the Occurrence, and that their investigation revealed that the "brown liquid on the floor," was "believed to be soda (Coke or Pepsi)" and appeared "fresh with no track marks or foot prints." (*See* Ex. C, at No. 17). Defendants believe that the individual who "spilled the soda," is an "unknown shopper." (*See id.,* at No. 19).

Within their discovery responses, Defendants produced their employee manual entitled "Safety Training Topics." (*See* Excerpts of Safety Training Topics, attached hereto as Exhibit

D). The Defendants' Spill Clean Up Procedures require that every associate places a paper towel or pocket pad in his pocket prior to starting his shift to ensure he can immediately clean up small spills. (*See* Ex. D, at WM 49). When a spill is discovered, protocol dictates that the spill area/aisle is to be blocked off by an associate and/or protected by an associate to prevent another customer or associate from coming into contact with the spill. (*See id.*, at WM 50). A caution cone is placed next to the spill while the associate uses a squeegee to reduce the size of the spill. (*See id.,* at WM 52). "The Maintenance Associate and Safety" indicates that at the start of every hour, a visual check should be completed of the "restrooms in the front and back, entrances and exits, action alley, produce, and dry grocery." (*See id.,* at WM 65). Defendants' "Slip Trip and Fall Guidelines" require associates to, "[c]omplete safety sweeps on a regular basis to help keep the salesfloor free of slip and trip hazards and falling merchandise…[i]include endcaps, sidecounters, stackbases, and the floor in safety sweeps." (*sic*) (*See* Slip, Trip and Fall Guideliens, attached hereto as Exhibit E). The Guidelines "requires all associates to be alert, look for hazards, and correct the hazards quickly." (*See* Ex. E).

*Defendants' Video Surveillance and Photographs*

In their Supplemental Answers to Plaintiff's Interrogatories, Defendants confirmed that "[t]he video and photographs…maintained by Walmart store no. 2290…are the only known video and photographs related to this case." (*See* Excerpt of Defendants' Supplemental Answers to Interrogatories, attached hereto as Exhibit F, at No. 13). The surveillance video of the Occurrence (the "Video") commences recording at 2:43:22 PM on Saturday, June 28, 2014. (*See* Video Screenshots of Creation of Spills, attached hereto as Exhibit G). The camera's vantage

shows the length of the "Paper & Cleaning" Aisle (the "Aisle") of the store and an exit/entrance[1]

to the store nearby. (*See* Ex. G). The Video does <u>not</u> show the Plaintiff fall and, consequently,

does not show the Initial Spill in which the Plaintiff falls; however, for the reasons more

thoroughly discussed below, it is relevant as to the issues of notice raised in Defendants' Motion.

When the Video begins, there are initially no spills in the Aisle. (*Id.*). At 2:44:52 PM, a

customer walks cross the north end of the Aisle, holding a cup in her right hand, and spills a dark

substance out of the cup and onto the floor[2]. (*Id.,* at p. 3). When the unknown customer leaves

the Aisle, a dark spill remains on the floor (the "Subsequent Spill"). (*Id.*).

At 3:08:30 PM, a bald Walmart associate enters the Aisle from the south end,

distinguished by his uniform, as well as name badge, pocket towel, and scanner in his hand. (*See*

Video Screenshots of Employees, attached hereto as Exhibit H, at p.1). He proceeds to check the

merchandise in the Aisle and is joined at 3:09:50 PM by a second Walmart associate. (*See* Ex. H,

at p. 3). Both Walmart associates work in the Aisle, continuously walking up and down the

Aisle, restocking the shelves and repeatedly looking in the direction of the Subsequent Spill until

3:17:38 PM. (*See* Ex. H, at pp. 3-10). A third Walmart associate with a cart enters the Aisle at

3:17:55 PM from the north end, turns her cart around, and walks right over the Subsequent Spill.

(*See id.*, at pp. 11-13). The bald associate returns to the Aisle to continue to restock at 3:18:19

PM and at 3:21:45PM, he walks with a customer in a magenta shirt up to the north end of the

Aisle, past the Subsequent Spill, and around the end cap. (*See* Ex. H, at pp. 14-15). At all times

that this bald Walmart associate is present in the Aisle, the Subsequent Spill remains present and

visible on the Screenshots. (*See id.,* at pp. 3-15). At 3:26:27 PM, the bald Walmart associate exits

---

[1] The Exit/Entrance in the screenshot has been circled/highlighted for the purposes of this Motion and the convenience of the Court.

[2] The Subsequent Spill in the screenshot has been circled/highlighted for the purposes of this Motion and the convenience of the Court.

the Aisle. (*See id.,* at 15). At this point in time, despite the fact that three Walmart associates have been in the Aisle within the initial 42 minutes following the Subsequent Spill, and two Walmart associates have walked by it, no one has stopped to clean it up. (*See id.*).

The Plaintiff, Elizabeth Wiseman, first appears on camera at 3:41:01 PM, wearing a yellow shirt. (*See* Video Screenshots of Occurrence, attached hereto as Exhibit I, at p. 1). The Subsequent Spill remains at the top of the Aisle[3]. (*See id.*). The Plaintiff walks near the Subsequent Spill initially, but has her back to it. (*See id.,* at p. 2). She is in the Aisle for less than three (3) minutes and at 3:43:26 PM, proceeds to head around the end cap of the Aisle, out of the sight of the camera, which is when she falls. (*See id.,* at p. 2). Her granddaughter, Ayanna Wiseman, runs to her (as a result of hearing her fall) at 3:43:34 PM. (*See id.*). Ayanna Wiseman leaves to get help and re-appears with the same bald Walmart associate from before at 3:44:45 PM. (*See id.,* at p. 3). The bald Walmart associate leaves the scene of the Occurrence at 3:45:09 PM, after first observing the Plaintiff on the floor, presumably to get help. (*See id.,* at pp. 3-4).

Following the Occurrence and the bald Walmart associate's departure, another Walmart associate arrives at the Premises at 3:48:46 PM and proceeds to attend to the site of the Subsequent Spill at the north end of the Aisle, moving an object located near the Subsequent Spill. (*See* Video Screenshots of Clean Up, attached hereto as Exhibit J, at p. 1). He attends to the Plaintiff and then, at 3:50:47 PM, proceeds to stand in the Subsequent Spill visible in the Video[4]. (*See* Ex. J, at p. 2). Two Walmart employees[5] arrive on scene at 3:51:26 PM, one with a yellow caution cone, which is placed *between* the Subsequent Spill and the location of the

---

[3] The Plaintiff and the Subsequent Spill in the screenshot has been circled/highlighted for the purposes of this Motion and the convenience of the Court.

[4] The Walmart employee standing in the Subsequent Spill in the screenshot has been circled/highlighted for the purposes of this Motion and the convenience of the Court.

[5] Based on Defendants' Answers to Interrogatories, the Walmart employees are believed to be Mr. Cunningham and Ms. Kennedy. (*See* Ex. C, at No. 5).

Plaintiff's fall[6]. (*See id.,* at p. 3). At 3:51:33 PM, the Walmart employee who brought the caution cone then bends down[7] with a towel in hand, again towards the Subsequent Spill in the Video. (*See id.,* at p. 4). When he/she leaves at 3:51:39 PM, the Subsequent Spill is gone. (*See id.,* at p. 5). The Plaintiff's son, Eric Wiseman, arrives and begins taking photographs of the Premises at 3:53:51 PM, *after* the Subsequent Spill has been wiped up. (*See id.,* at pp. 5-6).

Defendants also produced a series of photographs taken shortly after the Occurrence by a Walmart associate[8]. (*See* Defendants' Photographs, attached hereto as Exhibit K). The photographs show the Initial Spill in which the Plaintiff slipped to be a dark and translucent liquid, smeared across the floor, contrary to Defendants' allegations that their inspection of the Initial Spill indicated it had "no track marks or foot prints." (*See, generally,* Ex. K; *see also,* Ex. C, at No. 17). One photograph shows what appears to be the bottom half of the Plaintiff seated in a chair. (*See* Ex. K, at p.11; WM 9). Another shows several droplets of the dark liquid farther away from the Spill in which the Plaintiff fell, in other words, closer to the Aisle that the Plaintiff had just passed through. (*See id.,* at WM 14). The Subsequent Spill, which was cleaned up immediately when Mr. Cunningham and Ms. Kennedy arrived, is not included in Defendants' photographs. (*See* Ex. K & J).

*Plaintiff's Deposition*

At her deposition, Plaintiff stated that she was walking from the "housecleaning" Aisle to the "next aisle" with her granddaughter, Ayanna Wiseman, at the time of the Occurrence. (*See* Excerpts of Plaintiff's Deposition, attached hereto as Exhibit L, at pp. 58:13-20). At the time of

---

[6] The yellow caution cone in the screenshot has been circled/highlighted for the purposes of this Motion and the convenience of the Court.

[7] The employee bending down to clean the Subsequent Spill in the screenshot has been circled/highlighted for the purposes of this Motion and the convenience of the Court.

[8] It is not clear based on Defendants' Answer to Plaintiff's Interrogatory No. 5 if the photographs were taken by "Mr. Cunningham" or "Ms. Kennedy."

her fall, she was looking straight and then suddenly fell in a "blackish," "dark, wet" liquid. (*See* Ex. L, at pp. 60:4-15; 64:21-65:5). She had not observed the liquid on the floor prior to her fall. (*See id.,* at p. 65:6-10). The Plaintiff testified that the texture of the Initial Spill was, "wet," "thin," and "[l]ike the consistency of a beverage you would drink." (*See id.,* at pp. 67:7-17). She admitted that she did not see anything else on the floor other than the Initial Spill, did not what the Initial Spill looked like before she fell in it, and did not know where it came from or how long it had been on the floor." (*See id.,* at pp. 68:8-69:12). The Plaintiff was not asked if there was more than one spill located on the Premises during her deposition and had not seen the Video at the time of her deposition.

**STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has ruled that when these elements are met, the granting of summary judgment is mandatory. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, (1986).

Discussing when summary judgment is appropriate, the Fourth Circuit explained, "summary judgment should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." *Miller v. FDIC*, 906 F.2d 972, 973-74 (4th Cir. 1990). Not just any factual dispute, even if genuine, will defeat a motion for summary judgment; a motion for summary judgment is properly granted so long as there are no "material" disputes of fact. As Justice White explained that, "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510 (1986) (emphasis in original). A factual dispute is material only when the resolution of that dispute might affect the outcome of the case. *Id.* "[I]rrelevant or unnecessary" factual disputes are insufficient to permit a question to go to the jury. *Id.*

Where no dispute of material facts exists, summary judgment should be granted if the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court's inquiry is whether "legal theory or doctrine supports the movant's position that judgment should be entered." *Wright & Miller, supra*, § 2725 at 439. Of course, the court is not confined solely to the legal theories and doctrines advanced by the moving party. *Id.*

In determining whether the moving party is entitled to summary judgment, the court must view the evidence in the light underline most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1386 (1986). If even after applying that standard, no material dispute of fact exists and the moving party is entitled to judgment as a matter of law, the court must grant the motion. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

## ARGUMENT

I.      Plaintiff's Evidence of Constructive Notice to Defendants is Sufficient to Support a Finding of Negligence Against Chimes.

"To succeed in a negligence action, the plaintiff must [allege and] establish the following: (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Valentine v. Target, Inc.*, 112 Md.App. 679, 683 (1996) (quoting *BG & E v. Lane*, 338 Md. 34, 43 (1995)) (internal quotation marks omitted). In a premises liability action, it is well established that an owner or

occupier of a premises has a duty to provide reasonable precautions against foreseeable dangers, the owner is not an insurer of the premises. *Leimbach v. Bickford's*, 214 Md. 434, 440 (1957); *Moulden,* 239 Md. at 232; *Lexington Market Authority v. Zappala,* 233 Md. 444, 446, (1964). "The highest duty is that owed to an invitee[9]; it is the duty to "use reasonable and ordinary care to keep [the] premises safe for the invitee and to protect [the invitee] from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for [the invitee's] own safety will not discover." *Rowley v. Mayor*, 305 Md. 456, 465 (1986).

Plaintiff agrees with Defendants' reference to the applicable law that Defendants are not insurers of their customers' safety and that "[t]he burden is upon the customer to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence." *Giant Food, Inc. v. Mitchell*, 334 Md. 633, 636 (1994); *Moulden,* 239 Md. at 232. The courts have defined "constructive knowledge" as any dangerous or hazardous condition that could have or should have been discovered through ordinary care. *See Maans v. Giant of Maryland, LLC,* 161 Md.App. 620, 629 (2005). A proprietor has *actual* notice of a hazard when one or more of its agents is specifically aware of the danger. *See Rehn v. Westfield Am.,* 153 Md. App. 586, 593 (2003).

In proving notice, the evidence must show that the business owner's knowledge of the dangerous or hazardous condition "was gained in sufficient time to give the owner the opportunity to remove it or to warn the invitee." *Keene v. Arlan's Dep't Store of Baltimore, Inc.,* 35 Md.App. 250, 256 (1977). Whether there has been sufficient time for a property owner

---

[9] "[F]our classifications have been recognized [in Maryland]: invitee, licensee by invitation, bare licensee, and trespasser. *Id.* An invitee is a person 'on the property for a purpose related to the possessor's business.' *Id.* The possessor owes an invitee a duty of ordinary care to keep the possessor's property safe. *Id.*" *Baltimore Gas & Elec. Co. v. Flippo,* 348 Md. 680, 688-89, (1998).

to discover, cure, or clean up a dangerous condition depends on the circumstances surrounding the events leading up to the invitee's injury. *See Deering Woods Condo. Ass'n v. Spoon,* 377 Md. 250, 264 (2003). Colloquially referred to as the "time on the floor" rule, its purpose, as explained by the Court, "requires a demonstration of how long the dangerous condition existed prior to the accident so that the fact-finder can decide whether the storekeeper would have discovered it if he or she had exercised ordinary care; and…also shows that the interval between inspections was at least as long as the time on the floor." *Maans,* 161 Md.App., at 639. "What will amount to sufficient time depends upon the circumstances of the particular case, and involves consideration of the nature of the danger, <u>the number of persons likely to be affected by it</u>, <u>the diligence required to discover or prevent it</u>, <u>opportunities</u> and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions.' " *Id.* (emphasis added) (quoting *Moore v. Am. Stores Co.,* 169 Md. 541, 551 (1936)).

Although Defendants expound in their Motion upon the various relevant case law, their brief factual application of the law to the case *sub judice* fails, primarily because the Defendants completely omit any referral to the most compelling objective evidence in this case, i.e. the photographs and Video, and instead rely *solely* upon the subjective evidence, i.e. the Plaintiff's deposition and two Affidavits produced by Ms. Tibbs and Mr. Cunningham. *See* Defendants' Motion, at pp. 5-12. That Defendants would intentionally choose to piecemeal evidence together in their Motion to rely upon their contention that they had no notice of the Initial Spill is no mystery because the Video both supports the argument that that the Initial Spill came from a customer's cup, that it was likely soda, and that it was present on the floor for at least 42 minutes prior to the Occurrence. *See* Defendants' Motion, at p. 11.

Based on the Video, a jury could reasonably determine that the Initial Spill in which the Plaintiff fell existed for a sufficient period of time and Defendants' employees walked near it and around it such that the Defendants should have known about it- either actually or constructively. Plaintiff does <u>not</u> contend she slipped in the Subsequent Spill seen in the video, but taking the facts in the light most favorable to her, a jury could easily determine that the Subsequent Spill created at 2:44:52 PM was soda, i.e. Pepsi or Coke, and that this same customer repeatedly spilled her soda in the same area as she walked by the Aisle, thus creating the Initial Spill, which is hidden by the Aisle "end-cap" in the Video, immediately before she makes the Subsequent Spill. Alternatively, taking the facts in the light most favorable to the Plaintiff, a jury could also easily determine that the Subsequent Spill was, over the course of an hour, tracked the few feet from its origin to the location of the Initial Spill where the Plaintiff fell on the Premises, including by the Walmart employee who drove her shopping cart through the Subsequent Spill.

As described in detail and exhibited for this Court, the Video shows that a dark substance out of a cup <u>one hour</u> prior to the Plaintiff's fall at the top of the "Paper & Cleaning" Aisle, thus creating the Subsequent Spill. (*See* Ex. G). Taking the evidence in the light most favorable to the Plaintiff, this is when the Initial Spill was also created, given the similarity in substance, the proximity to the Initial Spill, and the droplets leading from the Initial Spill to the Subsequent Spill. (*See,* Ex. G, Ex. K, at WM 14, and Ex. L, at pp. 67:7-17). From the time that this customer creates both spills until the time that the Plaintiff falls, no less than three (3) Walmart employees approach, look in the direction of, and walk by the Subsequent Spill and, arguably, the Initial Spill. (*See, generally,* Ex. H). Given that the Walmart employees approach, walk by and walk <u>through</u> the Subsequent Spill, they had actual notice of the Subsequent Spill- and thus, the Initial Spill. (*See* Ex. H, at pp. 9, 11-15). *See Rehn,* 153 Md. App. at 593. Furthermore, numerous

customers pass through this Subsequent Spill on the floor. (*See, generally,* Ex. H). Although Plaintiff admits she did not see the Initial Spill before she fell in it, she has consistently attested that the dark liquid appeared to be "soda" – and, in fact, the Defendants agreed that the Spill "appeared to be soda." (*See* Ex. C, at No. 17 and Ex. L, at p. 67:7-17; *see also,* Exhibit 3 to Defendants' Motion). The photographs of the Initial Spill taken after Plaintiff fell in it confirms that the Initial Spill is a dark liquid that was spattered in multiple places on the floor of the Premises. (*See* Ex. B and K). Accordingly, even though Plaintiff fell off camera, a few feet away from the Subsequent Spill, Plaintiff contends- and a jury could reasonably find- that the Subsequent Spill was created by the same customer who created the Initial Spill or that the Subsequent Spill lead to the creation of the Initial Spill in which the Plaintiff fell, due to being tracked across the floor.

What further supports Plaintiff's argument that the two spills were originating from the same substance is the Defendants' actions after the Occurrence. When the Defendants first arrived at the Premises after the Plaintiff fell, the first Walmart associate- in keeping in line with the Defendants' policies and procedures- stood *in* the dark substance spilled by the customer featured in the video surveillance. (*See* Ex. J, at p. 2 and Ex. D, at WM 50). Then, when Ms. Tibbs and Mr. Cunningham arrive at the Premises, the caution cone was *not* placed at the "end cap" of the Paper & Cleaning" Aisle, which is where the Plaintiff fell, but, instead, was placed *between* where the Initial Spill and Subsequent Spill were located. (*See id.,* at p. 3).

Plaintiff is, however, hindered in her ability to concretely show the Court that these two spills are the same substance because of the Defendants' destructive behavior following the Occurrence. At 3:51:33 PM, the employee who placed the caution cone, then *immediately* cleaned up this Subsequent Spill at the top of the aisle with a towel- which also suggests that the

Subsequent Spill was a liquid substance and likely soda. (*See* Ex. J, at p. 4). After wiping up the Subsequent Spill, the same employee then *moved* the caution cone and placed it *over* where the Subsequent Spill had been located. (*See id.,* at p. 5). Because Defendants cleaned up this Subsequent Spill immediately and did not preserve it, neither the Plaintiff nor her son, who arrived after the caution cone had been put down, were able to photograph it in order to prove without question that it was the same substance. (*See* Ex. J, at pp. 5-6). Furthermore, because the Defendant did not include this Subsequent Spill in their photographs- and they only took the photographs *after* they placed down the caution cone and wiped up the Subsequent Spill, the Defendants have caused great prejudice to the Plaintiff. (*See id.,* Ex. K, and Ex. C, at No. 5).

In essence, there are two inferences that can be drawn from the undisputed fact that there were two spills on the floor located within a few feet of each other. The first inference that can be drawn is that which the Defendants will likely contend: that the Initial Spill in which the Plaintiff fell and the Subsequent Spill created by a customer an hour before the Occurrence are two separate and unrelated spills. The second inference that can be drawn is that which the Plaintiff contends: the Initial Spill and Subsequent Spill are related by proximity and substance such that Defendants had constructive notice, if not actual notice, of both, and failed to clean the spills in the ample time that existed to do so. Certainly, the possibility that the Initial Spill occurred moments before the Subsequent Spill due to the same customer is equally as likely, if not *more* likely, than Defendants' contention that "another customer spilled the liquid just moments before the Plaintiff unfortunately walked upon" the Initial Spill. *See* Defendants' Motion, at p. 12. And the very nature of accepting the premises that Plaintiff's theory is a reasonable and rationale inference that a jury may conclude, the Defendants are not entitled to summary judgment as a matter of law.

Assuming *arguendo* that when the unknown customer created the Subsequent Spill at 2:44:52 PM, she had spilled her drink repeatedly and thus created the Initial Spill, then Defendants clearly had reasonable opportunity to remove it and/or warn the Plaintiff. *See Keene,* 35 Md.App., at 256. If a juror believes this event and customer to be the origination of multiple spills of soda in the same, small area, then the Defendants had an entire <u>hour</u> to discover the spills and clean them. (*See* Ex. D and I). In fact, multiple Walmart associates/employees are circling around and walking by this customer's Subsequent Spill- and thus walking by and through the Initial Spill- such that had they exercised reasonable care, they would have and should have discovery the spills. *See Maans,* 161 Md.App., at 639. This is particularly true for an aisle of the Store that is in such close proximity to the entrance and exit of the Store, which is to be visually checked every hour in accordance with Walmart's guidelines. (*See* Ex. D, at WM 65). Given that both spills existed for at least an hour, Walmart failed to comply with its own guidelines, which are purportedly in place to prevent an Occurrence such as this one. At a minimum, the three (3) Walmart associates who were working in the "Paper & Cleaning" Aisle clearly failed to "be alert [and] look for hazards," as required by Walmart protocol because for the 42 minutes following the origination of the spills, all three failed to observe the Subsequent Spill, which was visible from a surveillance camera located in the ceiling at the *opposite* end of the "Paper & Cleaning" Aisle. (*See* Ex. E). Thus, since there were multiple spills (or a large spill that had been smeared) in a main walkway, the high volume of customer traffic in this area of the Store, the foresight that the Defendants' employees should have used to simply be aware of spills that they were walking by and through, and the foreseeability that a customer, such as the Plaintiff, would fall if these spills were not remedied, Defendants clearly not only had sufficient time to discover the Spill, but also sufficient time to remedy it. *See Maans,* 161 Md.App., at 639.

Given the witness' testimony, the photographs, and the video surveillance, the facts alleged by the Plaintiff, construed in the light most favorable to her, clearly support a claim that Defendants had constructive, as well as actual, notice of the Initial Spill prior to the Occurrence or, minimally, that there is a genuine dispute of material fact as to whether Defendants had constructive notice, such that a jury could reasonably find Defendants were negligent. Accordingly, Defendants' Motion for Summary Judgment should be denied.

II.     There is No Evidence that Plaintiff was Contributorily Negligent.

"Contributory negligence is the failure to take ordinary care for one's own safety." *Kasten Constr. Co. v. Evans*, 260 Md. 536, 541 (1971). "It is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." *Potts v. Armour Co.,* 183 Md. 483, 490 (1944); *see also Menish v. Polinger Co.,* 277 Md. 553, 559 (1976). If a plaintiff was contributory negligent, it will bar their recovery. *Casper v. Charles F. Smith & Son, Inc.,* 71 Md. App. 445, 472 (1987). But it is the defendant who carries the burden of proving that the plaintiff was contributorily negligent. *Moodie v. Santoni*, 292 Md. 582, 586 (1982).

"Ordinarily, the question of whether the Plaintiff has been contributorily negligent is for the jury, not the judge, to decide." *Campbell v. Baltimore Gas & Elec., Co.*, 95 Md. App. 86, 93 (1993). "The question of contributory negligence must be considered in the light of all the inferences favorable to plaintiff's case that may be fairly deduced from the evidence. Where there is a conflict of evidence as to material facts relied on to establish contributory negligence, or more than one inference may be reasonably drawn therefrom, the question should be submitted to the jury." *Baltimore Transit Co. v. Castranda*, 194 Md. 421, 434 (1950).

To find a plaintiff was contributory negligent as a matter of law, such "that a case may be withdrawn from the jury on the ground of contributory negligence, the evidence must show some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds." *Menish v. Polinger Co.*, 277 Md. 553, 563 (1976) (quoting *Baltimore Transit Co. v. Castranda*, 194 Md. 421, 434 (1950)). "The prominent and decisive act or omission must reveal that the injured party was or should have been aware of a dangerous situation and failed to exercise ordinary care to protect himself." *G.C. Murphy Co. v. Greer*, 75 Md. App. 399, 402 (1988) (emphasis added).

Defendants' failing argument that Plaintiff was contributorily negligent is elucidated by the fact that Defendants write only one paragraph to jointly apply both the defenses of contributory negligence *and* assumption of the risk to the case at hand. It is ironic that given the number of Defendants' employees who were at the Premises for 42 minutes prior to the Occurrence who were allegedly totally unaware of either spill, Defendants should now claim that Plaintiff should have been aware of the Initial Spill due to its "location and color." *See* Defendants' Motion, at p. 14. There is no evidence as to what the Initial Spill looked like prior to Plaintiff falling in and smearing it; therefore, it cannot be said without question that Plaintiff should have seen it. Furthermore, contrary to what the Defendants contend, there is no testimony that the Plaintiff "failed to look where she was walking." *Id.* In her deposition, Plaintiff testified that she was "looking straight." (*See* Ex. L, at p. 60:4-15). There is no evidence that her attention was preoccupied by anything other than shopping in the Store or that her vision was obscured by anything in her hands. (*See* Ex. I, at p. 2). Additionally, a soda spill is not the kind of condition commonly incident to the Defendants' business, such as boxes or other like obstructions common to grocery and provision stores that the Plaintiff should have reasonably expected to

find. *See Tennant v. Shoppers Food Warehouse MD Corp.,* 115 Md.App. 381, 391 (1997). In fact, Walmart "expects and intends that [its] customers shall look not at the floor but at the goods which [they display] to attract their attention." *Myers v. TGI Friday's Inc.,* 2007 WL 4097498, 8 (D. Md., 2007). The evidence suggests that Plaintiff was not aware of any spill at any time prior to the Occurrence because when she was in closest proximity to the Subsequent Spill, she had her back to it, and then she fell immediately in the Initial Spill when she walked around the "end cap" of the Aisle for the first time on the date of the Occurrence. (*See* Ex. I, at pp. 1-2).

The question of the Plaintiff's alleged contributory negligence, when considered in the light of all the inferences favorable to her case that may be fairly deduced from the evidence, does not suggest it be answered affirmatively. At a minimum, given the conflict of evidence as to material facts Defendants rely upon to establish contributory negligence, and the multiple inferences that may be reasonably drawn therefrom, the question should be submitted to the jury. *See Baltimore Transit Co. v. Castranda*, 194 Md. 421, 434 (1950).

III.     There is No Evidence that Plaintiff Assumed the Risk of her Injuries.

In Maryland, it is well settled that in order to establish the defense of assumption of risk, the defendant must show that the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger. *Poole v. Coakley Williams,* 423 Md. 91, 110-111 (2012)(citations omitted).  In order for the plaintiff to have knowledge of a risk, the *particular* plaintiff must have *actual knowledge* of the risk before she can be found to have assumed it. *Id.* at 114.  Because the focus is on what the plaintiff actually knew, understood and appreciated, the issue is ordinarily left to the jury to resolve. *Id.* at 115.

Thus, in order for a plaintiff to have assumed the risk of his or her injuries as a matter of law, we require that a plaintiff "must" have known that the risk was "actually present," not that

he or she "would," "should," or "could" have known that the risk "might well be present." *Id.* at 123. In *Poole* the Court of Appeals held that *Allen v. Marriott Worldwide Corp.,* 183 Md.App. 460 (2008), cert. denied, *Allen v. Marriott,* 408 Md. 149 (2009)*,* incorrectly suggested that a compilation of facts and inferences, amounting to less than actual knowledge, would ever be sufficient to impute knowledge to a plaintiff as a matter of law, and therefore <u>overruled</u> *Allen*. *Id.* at 121-122.

Here, as indicated above, the evidence suggests that Plaintiff was not aware of the Initial Spill until she slipped in it. Moreover, there is nothing to indicate that Plaintiff had knowledge of the dangers of walking around the aisle or the potential spills on the Premises. Without said knowledge, Plaintiff was not in a position to appreciate the risks and dangers posed by the Initial Spill on the Premises and therefore did not confront that risk voluntarily. *See Poole,* 423 Md., at 110-111. Defendants further allege that Plaintiff somehow assumed the risk for wearing flip-flops in their "busy store." *See* Defendants' Motion, at p. 14. There is, simply, no legal foundation to support the claim that someone who falls, assumes the risk because she was wearing flip-flops at the time of her fall or that she knows she is more likely to fall because she is wearing flip-flops. Thus, Defendants' argument that this particular Plaintiff had knowledge of the danger, appreciated the risk, and voluntarily confronted said risk fails as a matter of law.

## CONCLUSION

In reviewing the evidence in the light most favorable to the non-movant, the Plaintiff, the facts alleged by the Plaintiff herein clearly support her claims of premises liability and negligence against Defendants. Based on the totality of the evidence, a reasonable jury could find that Defendants had actual and/or constructive notice of the existence of the Initial Spill such that Defendants' Motion for Summary Judgment must be denied. *See Myers,* 2007 WL, at 11.

Further, there remains a genuine dispute of material fact such that Defendants' affirmative defenses cannot by resolved by way of dispositive motion. Certainly, at a bare minimum, the conflict of evidence as to material facts relied on to establish negligence, and the existence of more than one inference that can reasonably drawn therefrom, mandates that the question should be submitted to the jury, rather than determined as a matter of law on dispositive motion that the Plaintiff failed to produce any evidence of negligence. *See Baltimore Transit Co. v. Castranda*, 194 Md. 421, 434 (1950).

WHEREFORE, Plaintiff, Elizabeth Wiseman, respectfully requests that Defendants, Wal-Mart Stores, Inc. and Wal-Mart Stores East, LP's  Motion for Summary Judgment be denied and grant such further relief as justice requires. A proposed Order is attached hereto.

Respectfully submitted,

_____/s/_____
Scarlett M. Corso
GILMAN & BEDIGIAN, L.L.C.
108 W. Timonium Road, Suite 203
Timonium, Maryland 21093
(410) 560-4999
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of June 2017 a copy of Plaintiff's Response In Opposition to Defendants' Motion for Summary Judgment was electronically filed and served via the Court's CM/ECF Systems upon:

Jennifer M. Alexander
BRASSEL ALEXANDER & RICE, LLC
888 Bestgate Road, Suite 200
Annapolis, Maryland 21401
*Attorney for Defendants*

_____/s/_____
Scarlett M. Corso