# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ELIZABETH WISEMAN | * |
| Plaintiff, | * |
| v. | * Civil Case No. 1:16-cv-04030-SAG |
| WAL-MART STORES, INC., *et al*. | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Elizabeth Wiseman ("Plaintiff") filed this premises liability action against Defendants Wal-Mart Stores, Inc. and Wal-Mart Stores East, LP (collectively "Defendants"). Pending before this Court is Defendants' motion for summary judgment. [ECF No. 32]. The issues have been fully briefed, [ECF Nos. 32, 34, 37], and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the motion will be denied.[1]

## I. FACTUAL BACKGROUND

The facts below are taken in the light most favorable to Plaintiff, the non-moving party. On June 28, 2014, around 2:30 P.M., Plaintiff and her granddaughter, Ayanna Wiseman, went shopping at the Wal-Mart store in Owings Mills, Maryland. (Depo. Wiseman 53:11-17, 57:15-58:1). Sometime before 3:40 P.M., Plaintiff, while approaching the end of the detergent aisle, slipped and fell in a dark liquid on the floor. (*Id.* 60:8-15, 64:21-65:2). Plaintiff testified that at the time of her fall she was looking straight ahead "to the next aisle. (*Id.* 60:4-21). As a result, she did not observe any foreign substance on the floor. *Id.* Plaintiff also admitted that she did not know the source of the liquid, nor how long the liquid had been on the floor prior to her fall. (*Id.*

---

[1] This case has been referred to me for all proceedings and for the entry of judgment. [ECF No. 12].

69:10-12). Plaintiff did not observe any foreign objects or open merchandise in the aisle near the spill that could have suggested the source of the liquid. (*Id*. 67:18-21; 68:1-13). After Plaintiff fell, however, she noticed that both her hands and her pants were wet. (*Id*. 62:1-4). Moreover, Plaintiff was able to recall the color and makeup of the liquid, testifying that it had a thin texture, a dark color, and the consistency of a soda beverage. (*Id*. 67:10-17).

Another customer, Gloria Pleet, witnessed Plaintiff's fall and immediately came to her aid. (*Id*. 73:2-14). Additionally, Wal-Mart employees, including Ruth Tibbs, a support manager, and Richard Cunningham, an assistant manager, arrived on the scene shortly after Plaintiff's fall. (Tibbs Aff.; Cunningham Aff.). Another employee, Ms. Kennedy, an asset protection associate, wrote a report of the incident and took photos of the substance. (Def. Ans. Interrog. No. 5). Plaintiff's family also took a picture of the liquid that caused her fall. (Depo. Wiseman 83:19-84:13).

As a result of severe and permanent injuries to her back, neck, shoulder, and knee, Plaintiff filed the instant suit in the Circuit Court for Baltimore County on November 2, 2016. (Compl. pg. 1). The case was subsequently removed to this Court. [ECF No. 1]. In her complaint, Plaintiff alleges that Defendants breached their duty of care owed to her as a business invitee by failing to: (1) exercise care and caution, (2) maintain a safe environment by permitting a dangerous condition to remain on the floor, (3) warn Plaintiff of the dangerous condition, and (4) remedy the condition. (Compl. at ¶¶ 7-9; 15-17). Plaintiff also contends that Defendants had "actual and/or constructive" knowledge of the unsafe condition and nevertheless failed to warn of or remedy the situation. (*Id*. at ¶¶ 9, 17).

## II. LEGAL STANDARDS

Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants, as the moving party, bear the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad,* 823 F. Supp. 2d 334, 348 (D. Md. 2011). If Defendants establish that there is no evidence to support Plaintiff's case, the burden then shifts to Plaintiff to proffer specific facts to show a genuine issue exists for trial. *Id*. Plaintiff must provide enough admissible evidence to "carry the burden of proof at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for Plaintiff. *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 252 (1986). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Casey*, 823 F. Supp. 2d at 349. Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. Plaintiff "must produce competent evidence on each element of his or her claim." *Miskin v. Baxter Healthcare Corp*., 107 F. Supp. 2d 669, 671 (D. Md. 1999). If Plaintiff fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Casey*, 823 F. Supp. 2d at 348-349. In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing

the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

**III.    ANALYSIS**

Since the alleged tort and resulting injury occurred in Maryland, Maryland substantive law determines Plaintiff's burden of proof and what constitutes a "material fact." *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Branhaven, LLC v. BeefTek, Inc.*, 965 F. Supp. 2d 650, 664 (D. Md. 2013) ("When a claim is based on state law, the choice of law rules are those of the state in which the district court sits."); *Lab. Corp. of America v. Hood*, 911 A.2d 841, 845 (Md. 2006) (holding that, in a tort action, Maryland applies the law of the state where the injury occurred). Under well-established Maryland negligence jurisprudence, a properly pleaded claim of negligence includes four elements. Plaintiff must show 1) that Defendants were under a duty to protect Plaintiff from injury, (2) that Defendants breached that duty, (3) that Defendants' breach of the duty proximately caused the loss or injury suffered by Plaintiff, and (4) that Plaintiff suffered actual loss or injury. *See Troxel v. Iguana Cantina*, 201 Md. App. 476, 495 (2011). In premises liability cases, the duty of care owed by a landowner is determined by the legal classification of the entrant. *See Deboy v. City of Crisfield*, 167 Md. App. 548, 555 (2006). That is, the duty of care varies according to whether the visitor is an invitee, licensee, or trespasser. *Id.* Here, both parties agree that Plaintiff's legal classification is that of a "business invitee." (Mot. Sum. Judg. pg. 5; Opp. Mot. Sum. Judg. pg. 6).

The business invitee is owed the highest duty of care. *See Deboy,* 167 Md. App. at 555. A landowner must "exercise reasonable care to protect the invitee from injury caused by an unreasonable risk that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the

4

exercise of reasonable care." *Rybas v. Riverview Hotel Corp.*, 21 F. Supp. 3d 548, 561 (2014). More specifically, the duties of a landowner to a business invitee include "the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers." *Id*. A business invitee can reasonably assume that a landowner will exercise reasonable care to "ascertain the condition of the premises, and if [the landowner] discovers any unsafe condition [he or she] will either take such action as will correct the condition and make it reasonably safe or give a warning of the unsafe condition." *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 117-18 (1955).

Despite the heightened duty owed to the business invitee, a landowner is not required to be an insurer of the invitee's safety. *Id.* at 118. The invitee has a duty to observe his or her surroundings and "exercise due care for his or her own safety." *Rybas*, 21 F. Supp. 3d at 562. As a result, a landowner has no duty to warn against open, obvious, and present dangers. *Id*. Nor does a presumption of negligence arise solely because an invitee was injured on a landowner's premises. *See Rawls*, 207 Md. at 118. Consequently, in order for an invitee to recover damages for injuries sustained "from a fall in a store caused by a foreign substance on a floor or stairway [he or she must] produce evidence that the [landowner] created the dangerous condition or had actual or constructive knowledge of its existence." *Id*. at 119. An invitee is not required to show the landowner had actual knowledge of the dangerous condition, but the invitee must proffer evidence indicating the landowner,

> could have discovered the condition by the exercise of ordinary care [because] the dangerous condition existed for a length of time sufficient to permit a person under a duty to discover it if [he or she] exercised ordinary care [and the] failure to discover it may in itself be evidence of negligence sufficient to charge [the landowner] with knowledge of it.

5

*Id*. at 120. The facts and circumstances of each individual case shall determine whether the length of time taken to remedy or warn of a dangerous condition confers liability upon a landowner. *Id.* at 122. Evidence indicating the "nature of the condition, its foreseeable consequences, the means and opportunities of discovering it, the diligence required to discover and correct it, and the foresight which a person of ordinary prudence would have exercised under similar circumstances" should all be considered. *Id.* In a motion for summary judgment, "where it might reasonably be decided that the [landowner] could have discovered the dangerous condition by the exercise of reasonable care, the case should be submitted to the jury." *Id*. However, where no inference "can be reasonably drawn that the [landowner] could have discovered the condition by the exercise of reasonable care, the court should decide the case as a matter of law." *Id.*

Plaintiff offers no evidence to suggest Defendants caused the liquid on the floor.[2] Therefore, in order to defeat Defendants' Motion for Summary Judgment, Plaintiff must proffer competent evidence that Defendants had actual or constructive knowledge of the dangerous condition that caused her fall. *Rawls*, 207 Md. at 119. Plaintiff's primary pieces of evidence include still shots garnered from a security camera and photos taken by both Plaintiff's family and Defendants. (Opp. to Mot. Sum. Judg. Exhibits B, G-K). Plaintiff contends that the video and security camera photos show an unknown customer spilling a type of liquid at the end of the "Paper and Cleaning" aisle at around 2:44:52 P.M. (*Id*. pg. 5). The security photos show that this dark, circular foreign substance, Spill A,[3] remains on the floor, undiscovered, until 3:43:26 P.M.

---

[2] In fact, Plaintiff testified that she did not see any damaged merchandise or damaged packaging in the aisle where she fell. (Depo. Wiseman 67:18-21; 68:1-10).

[3] Plaintiff refers to this spill as the "subsequent spill" and the spill that Plaintiff fell in as the "initial spill." However, this labeling creates confusion and is in and of itself a determination of fact since a jury would

when Plaintiff falls (in a nearby location off camera) and Defendants are alerted to the situation. (*Id*. pg. 6; Exhibits G-J). The security photos also show three Wal-Mart employees stocking shelves and walking up and down the aisle where Spill A sits, from 3:08:30 P.M.until 3:26:27 P.M. (*Id.* pg. 5-6; Exhibit H). No close-range pictures exist of Spill A. (*Id*. pgs. 13-14).[4]

Spill A is not the foreign substance that causes Plaintiff to fall. (*Id*. pg. 12). Plaintiff slips on another foreign substance, Spill B, located around the end cap of the "Paper and Cleaning" aisle, and not in view of the security camera. (*Id*. pg. 6; Exhibit I at pgs. 2-4). Thus, the two pivotal questions in the instant matter are: (1) whether a jury could reasonably draw an inference that Spill A and Spill B are of the same substance and therefore, became dangerous conditions on the floor at nearly the same time, and (2) whether Defendants, based on the "time on the floor" evidence of Spill A, could have discovered both Spill A and Spill B through the exercise of reasonable care?

a. **Actual Knowledge**

In her Complaint and Opposition, Plaintiff peripherally argues in a single sentence that Defendants had actual knowledge of the dangerous condition "given that the Defendants' employees approach, walk by and walk through [Spill A]." (Opp. to Mot. Sum. Judg. pg. 12). Even assuming, *arguendo*, that a jury could reasonably infer Spill A and Spill B are linked, proximity of a store employee to a dangerous condition is not in itself sufficient to establish actual knowledge of a dangerous condition. *See Jones v. Shoppers Food Warehouse Corp.*, JKS

---

have to reasonably infer which spill came first. For those reasons, the spills are referred herein as Spill A and Spill B.

[4] In her Opposition, Plaintiff asserts that Defendants engaged in "destructive behavior" by cleaning up Spill A before any pictures could be taken, thus hindering her ability to prove with direct evidence that both Spill A and Spill B are indeed the same substance. (Opp. to Mot. Sum. Judg. pgs. 13-14). However, Plaintiff testified that no liquid had been mopped up before the photographs were taken. (Depo. Wiseman 83:19-84:1).

15-2096, 2016 WL 454951 at *2 (D. Md. Feb. 5, 2016) (holding that actual knowledge was not established even though store manager was stacking boxes right beside the spot of the plaintiff's fall); *see also, Konka v. Wal-Mart Stores*, 1998 WL 24378 (4th Cir. Jan. 26, 1998) (holding the mere fact that a store manager and an employee at the nearby counter were in close proximity to a wet spot on the floor is not in itself sufficient to establish notice). Moreover, both store managers, Ms. Tibbs and Mr. Cunningham, testified that they did not receive or know of any reports of a spill or other customer accidents in the area where Plaintiff fell. (Tibbs Aff. ¶¶ 9-10; Cunningham Aff. ¶¶ 8-9). Consequently, Plaintiff fails to meet her burden of establishing a genuine issue of material fact concerning Defendants' actual knowledge.

### b. Constructive Knowledge

In the alternative, Plaintiff contends that a jury could make the legitimate inference that Spill A and Spill B are the same substance and were spilled by the same individual at nearly the same time. Therefore, the "time on the floor" evidence of Spill A is adequate to create a genuine issue of material fact as to Defendants' constructive knowledge. (Opp. to Mot. Sum. Judg. pgs. 5-8; 12-16). Plaintiff proffers the following evidence to support her claim that Spill A and Spill B were created at the same time:

(1) At 2:44:52 P.M., the security camera shows an unknown customer walk from the end cap of the aisle, where Plaintiff fell, to the top of the aisle which is in view of the camera. (*Id.* Exhibit G). Plaintiff asserts that the video and photo show the unknown customer holding a white cup. (*Id.*) This unknown customer then continues to walk to the next aisle, but leaves behind a dark circle on the floor, thus creating Spill A. (*Id.*)

(2) Photos taken by Plaintiff's family and Defendants show the darkish color and liquid consistency of Spill B. (*Id.* Exhibits B, K). Plaintiff testified that, after falling, both her hands and her pants were wet and covered in a soda-like substance. (Depo. Wiseman 67:10-17).

(3) Security photos indicate the close proximity of Spill A and Spill B. (Opp. to Mot. Sum. Judg. Exhibits G-J). Specifically, Spill A sits at the top of the aisle and Plaintiff fell behind the end cap immediately next to Spill A (but off camera).[5] (*Id.*).

(4) Security footage shows that at 3:51:26 P.M., after Plaintiff fell, an unknown Wal-Mart employee placing a yellow caution cone near Spill A, bending down with a white towel in his back pocket. Shortly thereafter, Spill A was no longer visible in the photos. (*Id.* Exhibit J).

(5) Defendants' Spill Clean Up Procedures indicate that employees should "place a caution cone next to the spill to prevent any customer and cart traffic from tracking through the spilled material." (*Id.* Exhibit D).

Examining Plaintiff's evidence as a whole and in the light most favorable to her, a reasonable jury could conclude that Spill A and Spill B are indeed the same soda-like substance and were created around the same time by the unknown customer featured in the security photos. Although not dispositive, Plaintiff proffers evidence that goes beyond mere speculation and bald assumptions. *Casey*, 823 F. Supp. 2d at 349. Particularly probative are Plaintiff's testimony and the pictures suggesting that the substance of Spill B was most likely soda. (Depo. Wiseman 67:10-17; Opp. to Mot. Sum. Judg. Exhibits B, K). Combining that evidence with the security photos which could show the unknown customer appearing to spill a similarly colored liquid out

---

[5] Plaintiff, however, provides no specific measurements as to the distance between Spill A and Spill B.

of a white cup in the same general area, a rational inference can be made that Spill A and Spill B are the same substance and originated from the same source. (Opp. to Mot. Sum. Judg. Exhibit G). Finally, both Ms. Tibbs and Mr. Cunningham, in their respective affidavits, state that, "Another associate, whose name I do not recall, brought a mop and a caution cone to the area of the incident to clean up the brown liquid." (Tibbs Aff. at ¶ 8; Cunningham Aff. at ¶ 7). Defendants' procedural manual indicates that a caution cone should be placed "*next to* the spill" to prevent further accidents. (Opp. to Mot. Sum. Judg. Exhibit D) (emphasis added). The security footage shows that an unknown Wal-Mart employee placed the cone immediately next to Spill A, which bolsters the inference that Spill A was in the area of the spill that caused Plaintiff's fall. *See Moore v. American Stores, Co.,* 169 Md. 541 (1936) (allowing the rational inference that pieces of grease fell from a meat block or meat counter in defendant's store because the plaintiff fell immediately adjacent to the counter and had grease on both her hands and her dress).

Conversely, Defendants argue that there is no evidence, but only conjecture and speculation, establishing that Spill A is a soda-like substance, or that it is even a spill at all. (Reply to Opp. to Mot. Sum. Judg. pg. 7). Specifically, Defendants dispute Plaintiff's interpretation of the origin and make-up of Spill A in the security video. (*Id*. pg. 5). Defendants argue that the video does not conclusively show an unknown customer holding a cup (because the white object looks horizontal not vertical), and that Spill A appears to be solid in nature rather than a liquid soda-like substance. (*Id*.). The video and resulting still photos are somewhat grainy and do not clearly substantiate either party's version of the events. Although Defendants' interpretations of the security video may be valid, a court should never attempt to resolve issues of fact when ruling on a motion for summary judgment. *See Thacker v. City of Hyattsville*, 135

Md. App. 268, 286 (2000). Specifically, if the "facts are susceptible of more than one permissible inference, the trial court is obliged to make the inference in favor of the party opposing summary judgment. The court should never attempt to resolve issues of fact or of credibility of witnesses—these matters must be left for the jury." *Id*.; *Rybas,* 21 F. Supp. 3d 548, 559 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Consequently, viewing all of the evidence presented by Plaintiff in the light most favorable to her, a jury could reasonably infer that both Spill A and Spill B are soda and were spilled on the floor around the same time by the unknown customer with the white cup.

Next, Plaintiff offers her "time on the floor" evidence. Plaintiff points to the security footage showing Spill A remaining on the floor from 2:44:52 P.M. until Plaintiff falls at approximately 3:43:26 P.M. (Opp. to Mot. Sum. Judg. pgs. 4-7; Exhibits G-J). Therefore, Spill A and, by legitimate inference, Spill B, remained on the floor for approximately 58 minutes. (*Id*.). Additionally, the security still shots show three Wal-Mart employees walking and restocking shelves in the aisle where Spill A sits between 3:08:39 P.M. and 3:26:27 P.M. (*Id*. Exhibits G, H). Moreover, Defendants' Maintenance Associate and Safety manual dictates that employees should, "Complete safety sweeps *on a regular basis* to help keep the salesfloor [sic] free of slip and trip hazards. . .[including] endcaps, sidecounters, stackbases and the floor in the safety sweeps." (*Id*. Exhibit E) (emphasis added). Plaintiff argues that the evidence presented establishes that Defendants had constructive knowledge because they had sufficient time – 58 minutes – to discover and remedy the dangerous condition had they exercised reasonable care. (Opp. to Mot. Sum. Judg. pgs. 15-16).

To refute Plaintiff's "time on the floor" evidence, Defendants primarily rely on three slip and fall cases: *Moulden v. Greenbelt Consumer Services, Inc.,* 239 Md. 229 (1965); *Maans v.*

*Giant of Maryland, LLC,* 161 Md. App. 620 (2004); and *Zilichikis v. Montgomery County*, 223 Md. App. 158 (2015). (Mot. Sum. Judg. pgs. 7-10). These cases are readily distinguishable from the instant case because, in all three instances, the respective plaintiffs did not present *any* "time on the floor" evidence. In *Moulden*, the Court of Appeals of Maryland held that the plaintiff, who slipped on a green bean at 6:00 P.M., did not meet her burden of establishing constructive knowledge because the only evidence provided was a statement that the janitor regularly swept the aisles of the store around 3:30 P.M. daily. *Moulden*, 239 Md. at 231. Likewise, in *Maans*, the Court of Special Appeals of Maryland held that the defendant's lack of documentation of when an area was last inspected, along with assertions that an employee should have seen the dangerous condition, did not amount to sufficient evidence for a jury to infer constructive knowledge. *Maans*, 161 Md. App. at 630-33. Furthermore, in *Zilichikis*, the Court of Special Appeals of Maryland again found that the plaintiff failed to proffer sufficient evidence to establish constructive knowledge by the defendant. *Zilichikis*, 223 Md. App. at 189. There, the plaintiff, having slipped on a greasy substance in a parking garage, only presented testimony that the garage was "perpetually dirty" with many oil stains, and that defendants failed to perform daily inspections. *Id*.

In the instant case, whether the aforementioned evidence *proves* that Defendants had a reasonable opportunity to discover the dangerous condition and remedy it is unclear. However, Plaintiff does proffer competent evidence that Spill A sat on the floor for 58 minutes. *See Oliver v. Maxway Stores, et al.,* 2013 WL 6091844 (D. Md. 2013) (holding "time on the floor" evidence of 30 minutes was sufficient to raise an inference of constructive knowledge to defeat a motion for summary judgment). Plaintiff, through legitimate inferences, creates a genuine issue of material fact as to whether Defendants had constructive knowledge of Spill B. Although

Plaintiff may have an uphill battle at trial, summary judgment is not appropriate even in cases where the "inferences to be drawn from the evidence are *arguable at best*[.] . . . [T]he determination of the weight of the evidence is the responsibility of the jury." *Keene v. Arlan's Department Store of Balt. Inc.*, 35 Md. App. 250, 259 (1977) (reversing a directed verdict) (emphasis added). Consequently, summary judgment is not appropriate in this case.

    **c. Contributory Negligence and Assumption of Risk**

Defendants contend that even if Plaintiff meets her burden of presenting a genuine issue of material fact on each element of her negligence claim, she is ultimately barred from recovery because she assumed the risk of her injuries and was contributorily negligent. (Mot. Sum. Judg. pg. 12). First, Defendants argue Plaintiff was contributorily negligent because she failed to observe and avoid the "blackish" liquid on the light colored floor. (*Id*. pg. 14)

Contributory negligence is "the failure to observe ordinary care for one's own safety." *Union Memorial Hosp. v. Dorsey,* 125 Md. App. 275, 282 (1999) (quoting *Menish v. Polinger*, 277 Md. 553, 559 (1976)). "It is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." *Id*. It is the defendant's burden to prove that the plaintiff was contributorily negligent. *Id*. If the defendant meets this burden, the plaintiff is barred from recovery. *Id*. Maryland courts have stated time and time again that "ordinarily the question of whether the plaintiff has been contributorily negligent is for the jury, not the judge to decide." *Id*.; *Campbell v. Baltimore Gas & Elec. Co.,* 95 Md. App. 86, 93 (1993). "Only when the minds of reasonable persons cannot differ is the court justified in deciding the question of plaintiff's contributory negligence as a matter of law." *Union Memorial,* 125 Md. App. at 282. Here, Plaintiff testified that she was looking straight ahead "to the next aisle" when she fell, and as a result did not see

the substance on the floor. (Depo. Wiseman 60:4-7). Even allowing for the inference that Spill A and Spill B sat in Plaintiff's path of progression around the aisle, reasonable minds could differ as to whether Plaintiff was contributorily negligent in not seeing the spill. Although the color of the spill was "blackish" and "dark," a jury could find that a prudent person while shopping at a store would not be continuously looking at the floor, but rather looking at the items on display. In *G.C. Murphy Co. v. Greer*, the Maryland Court of Special Appeals held that the plaintiff's failure to observe and avoid an empty plastic carton in the middle of an aisle did not constitute contributory negligence as a matter of law. 75 Md. App. 399, 403 (1988). The court explained:

> [U]nder normal conditions, store patrons are entitled to rely upon the presumption that the proprietor will see that the passageways provided for their use are unobstructed and reasonably safe. Maryland appellate [c]ourts have therefore refused to hold a plaintiff contributorily negligent as a matter of law where the plaintiff fails to observe and trips over or slips on some substance obstructing the clear passage of a store aisle.

*Id.* Consequently, the question of whether Plaintiff was contributorily negligent in not observing Spill A and Spill B is left to the jury.

Second, Defendants contend that Plaintiff assumed the risk of injuring herself because she "voluntarily walk[ed] into the busy store wearing thong-type flip-flop sandals." (Mot. Sum. Judg. pg. 14). The affirmative defense of assumption of risk also serves as a complete bar to a plaintiff's recovery. *Blood v. Hamami Partnership, LLP*, 143 Md. App. 375, 385 (2002). The doctrine is based on the reasoning that if a plaintiff "voluntarily consents, either expressly or impliedly, to exposure to a known risk [he or she] cannot later sue for damages incurred from exposure to that risk." *Id.* In order to succeed on the affirmative defense of the assumption of risk the defendant must show that the plaintiff: "(1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger." *Id.* (quoting *Liscombe v.*

*Potomac Edison Co.,* 303 Md. 619, 630 (1985)). In the instant case, Defendants argue that wearing thong-type flip-flops into a store precludes recovery as a matter of law. Defendants provide no case law supporting this assertion, nor can any precedent be found.[6] (Mot. Sum. Judg. pg. 14). Moreover, there is nothing in the record to indicate that wearing flip-flops on June 28, 2014 was particularly risky, *i.e.* during a rainstorm or hazardous weather conditions. Thus, the question of whether Plaintiff knew or should have known of the potential dangers of walking in a store with flip-flops is an issue for the jury. Accordingly, Defendants fail to show as a matter of law that Plaintiff assumed the risk of slipping in a liquid substance solely because she chose to wear thong-type sandals to shop in Defendants' store.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment, [ECF No. 32], is DENIED.

A separate order is filed herewith.

Dated: August 4, 2017

/s/
Stephanie A. Gallagher
United States Magistrate Judge

---

[6] The relevant cases found mostly involve high-heels or spiked heels. *See Ramseur v. U.S.*, 587 F. Supp. 2d 672, 685 (2007) (holding plaintiff assumed the risk because a reasonable person wearing high heels would have taken precautions to avoid stepping on a perforated mat).