IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ELIZABETH WISEMAN

   Plaintiff,

v.               Civil Case No. 1:16-cv-04030-SAG

WAL-MART STORES, INC., *et al.*

   Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Elizabeth Wiseman ("Plaintiff") filed suit against Defendants Wal-Mart Stores, Inc. and Wal-Mart Stores East, LP (collectively, "Wal-Mart") for injuries she sustained after slipping and falling at a Wal-Mart Store in Owings Mills, Maryland. *See* [ECF No. 2]. Plaintiff seeks to recover damages, including medical expenses, relating to the accident. *Id.* Prior to the instant motion, Wal-Mart had filed a Motion in Limine seeking to exclude from evidence Plaintiff's proffered expert opinion testimony and related medical records and bills. *See* [ECF No. 25]. In the resulting Memorandum Opinion, this Court denied Wal-Mart's request to exclude the expert opinion testimony of Dr. Chad Zooker, and granted Plaintiff's Motion for Leave to File Expert Witness Disclosure for Dr. Zooker as a hybrid fact/expert witness. *See* [ECF No. 35]. At the same time, this Court deferred the decision whether to exclude the testimony of Plaintiff's twelve (12) other treating physicians until the parties addressed "whether expert testimony is required as to a particular medical record or bill, and whether exclusion is warranted based on surprise and the importance of the evidence . . . ." [ECF No. 35, 8]. Accordingly, now pending before the Court is Wal-Mart's Supplement to its Motion in *Limine* to Exclude Plaintiff's Expert Opinion Testimony and Related Information Including Medical

1

Records and Bills Pursuant to Fed. R. Civ. P. 37(C)(1), [ECF No. 38], Plaintiff's Opposition, [ECF No. 42], and Wal-Mart's Reply, [ECF No. 45].

For the reasons set forth below, Wal-Mart's Motion in Limine is GRANTED in part and DENIED in part, and Plaintiff's Motion for Leave to File Expert Witness Disclosure as to the remaining twelve (12) treating physicians is DENIED.

I. **DISCUSSION**

At issue in the pending Motion is: (a) whether plaintiff's alleged injuries constitute a "complicated medical question" necessitating expert testimony; (b) the scope of Dr. Zooker's admissible testimony; and (c) whether Plaintiff's untimely Rule 26(a)(2) disclosure prevents the twelve (12) remaining treating physicians from testifying. Importantly, both parties failed to provide, as this Court requested, a specific breakdown for each "particular medical record or bill" analyzing "whether expert testimony is required . . . and whether exclusion is warranted based on surprise and the importance of the evidence . . . ." [ECF No. 35, 8]. Consequently, this Court lacks the facts necessary to rule on any particular record or bill, but finds that Dr. Zooker may testify to and introduce the records he reviewed during his actual treatment of Plaintiff, and the bills relating in some way to the services he performed.

**A. Plaintiff's Shoulder and Knee Injuries Constitute a "Complicated Medical Question" Requiring Expert Testimony.**

Maryland law requires expert testimony to prove causation between the injuries and alleged negligent act, as well as to establish the reasonableness and fairness of the medical bills as evidence of damages, when a "claim involves a 'complicated medical question' that 'falls within the province of medical experts[.]'" *Galloway v. Horne Concrete Const.*, 524 F. App'x 865, 870 (4th Cir. 2013) (citing *Wilhelm v. State Traffic Safety Comm'n*, 230 Md. 91, 185 A.2d 715, 719 (1962)). While establishing the presence of a "complicated medical question" requires

a somewhat subjective fact-finding inquiry, *Wilhelm* specifies three (3) types of cases where a causal connection need not be established by expert testimony: (1) "when the disability develops coincidentally with, or within a reasonable time after, the negligent act;" (2) "where the causal connection is clearly apparent from the illness itself and the circumstances surrounding it;" or (3) "where the cause of the injury relates to matters of common experience, knowledge, or observation of laymen." *Wilhelm*, 230 Md. at 99.

The Maryland Court of Special Appeals has stated that establishing "an alternative theory of causation may be the decisive factor that transforms a non-medically complicated question of causation, requiring no expert medical testimony, into a complicated medical question, requiring such testimony as a matter of law." *Am. Airlines Corp. v. Stokes*, 120 Md. App. 350, 363, 707 A.2d 412, 418–19 (1998). Relevant here, the *Stokes* Court noted that "reports submitted by medical experts suggesting alternative theories of causation [can be] decisive factors in creating a complicated medical question where one might not have existed" in their absence. *Id.* at 419.

In addition, other jurisdictions have expressly held that personal injury claims involving multiple and/or preexisting and concurrent possible causes are medically complicated and require expert testimony "on the issue of causation." *Baltimore v. B.F. Goodrich Co.*, 545 A.2d 1228, 1231 (D.C. 1988).[1] Expert testimony is necessary "'[t]o prevent the jury from engaging in speculation' as to whether and to what extent the allegedly unlawful acts at issue—as distinct from other potential factors—caused plaintiff's harm." *Halcomb v. Woods*, 610 F. Supp. 2d 77, 85 (D.D.C. 2009) (quoting *B.F. Goodrich Co.*, 545 A.2d at 1231).

Plaintiff contends that her case falls within the first *Wilhelm* category because "Plaintiff's injuries developed immediately subsequent to the Occurrence." Pl.'s Resp., [ECF No. 42, 7].

---

[1] *See also Wallace v. McGlothan*, 606 F.3d 410, 420 (7th Cir. 2010) (stating that in Indiana, "'[T]he question of the causal connection between a permanent condition, an injury, and a pre-existing affliction or condition is a complicated medical question . . .'") (quoting *Topp v. Leffers*, 838 N.E.2d 1027, 1032 (Ind. Ct. App. 2005)).

Plaintiff explains that, almost immediately after the fall, she reported "markedly increased" shoulder and knee pain and that Dr. Jay "was concerned about a rotator cuff tear from the fall." Pl.'s Resp., [ECF No. 42-4, 2-4]. Painting the full picture, however, Plaintiff's medical records demonstrate that she was experiencing shoulder pain "for about a year" prior to the Wal-Mart incident and had "multiple previous small injuries to the right knee . . . ." *Id.* This, coupled with Dr. Stein's (Wal-Mart's expert) contention that Plaintiff's rotator cuff tear was "'indicative of a chronic degenerative tear' as opposed to a new injury resulting from the alleged" Wal-Mart incident prevents a clear finding (absent expert testimony) that Plaintiff's right knee and rotator cuff injuries "developed coincidentally" with the Wal-Mart fall. Def.'s Rep., [ECF No. 45, 3].

For identical reasons, Plaintiff's prior injuries prevent the causal connection between the injuries and the fall at Wal-Mart from being "clearly apparent" or relating to "matters of common experience, knowledge, or observation of laymen." As Wal-Mart notes, *Wilhelm* categories are more readily applied when a Plaintiff sustains an injury that does not implicate preexisting issues which cloud causation. Def.'s Rep., [ECF No. 45, 5].[2] Thus, like in *Wilhelm*, while Plaintiff's facial swelling and "bruising on her right knee" fall within the common observation of a layman not requiring expert testimony, whether the rotator cuff tear was the result of "chronic degeneration," as opposed to the Wal-Mart fall, does not. Def.'s Rep., [ECF No. 45, 6].

Indeed, the facts and circumstances surrounding Plaintiff's injuries are similar to *Kraft v. Freedman*, where the Maryland Court of Special Appeals required expert testimony to determine

---

[2] *Compare Galloway v. Horne Concrete Const.*, 524 F. App'x 865, 871–72 (4th Cir. 2013) (holding that "no experts are needed to establish that being rear-ended by an eighteen-wheel tractor-trailer in a multi-vehicle interstate accident can cause lower-back injuries" in a plaintiff "who had never suffered from or complained of back pain") with *Am. Airlines Corp. v. Stokes*, 120 Md. App. 350, 361, 707 A.2d 412, 417 (1998) (requiring expert testimony on causation between plaintiff's back injury and work-related incident because plaintiff "had a long history of chronic back problems that presented a far more likely explanation for his ultimate" injury than the incident alleged).

whether an automobile accident caused a recurrence of the plaintiff's ileitis disease. 15 Md. App. 187, 194, 289 A.2d 614, 618 (1972). In *Kraft*, the plaintiff was "practically cured" of her ileitis prior to a car accident but, within four (4) months of the accident, the disease reappeared. *Id.* at 189. The Court held that because of "the nature of the disease of ileitis and the complicated medical question involved in determining whether its recurrence was brought about as a natural incident of the disease or from the accident," *Wilhelm* required expert testimony. *Id.* at 194. Similarly, Plaintiff's rotator cuff tear may have developed naturally through "normal wear and tear," Def.'s Rep. [ECF No. 45, 6], or may be the result of the Wal-Mart fall. Like in *Kraft*, then, expert testimony is required here to determine the injury's true cause.

### B. The Scope of Dr. Chad Zooker's Testimony.

Federal Rules of Civil Procedure 26(a)(2)(A) and 26(a)(2)(B) require a party to "disclose to other parties the identity of any witness it may use at trial" pursuant to Rules 702, 703, or 705 of the Federal Rules of Evidence, and to provide a written report for any witness who is "retained or specially employed to provide expert testimony in the case" or "whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(A); Fed. R. Civ. P. 26(a)(2)(B). Importantly, however, treating physicians constitute "quintessential" hybrid fact/expert witnesses "for whom no Rule 26(a)(2)(B) disclosures are required." *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 500 (D. Md. 1997). Treating physicians qualify as hybrid fact/expert witnesses so long as "the source of the facts which form the basis for a treating physician's opinions derive from information learned during the actual treatment of the patient— as opposed to being subsequently supplied by an attorney involved in litigating a case . . . ." *Id.* at 501. *Sullivan* makes clear that treating physicians may render opinions based on facts obtained from their actual treatment of the plaintiff "regarding the existence of [the plaintiff's]

5

medical condition, its causation, [] treatment and prognosis" without filing the expert disclosures required under Rule 26(a)(2)(B). *Id.* at 508.

This Court's July 5, 2017 Memorandum Opinion [ECF No. 35] (together with its accompanying Order) denied Wal-Mart's Motion in *Limine* in part, specifically as to Dr. Zooker's expert testimony. Conceding that Dr. Zooker may testify at trial, Wal-Mart, in its Supplement to Defendant's Motion in Limine, contends that such testimony must be limited because "as a hybrid fact/expert for which no report is required pursuant to Fed. R. Civ. P. 26(a)(2)(C), Dr. Zooker is unable to testify regarding any of Plaintiff's medical records, other than his own, to establish causation, or to testify as to the fairness and reasonableness of medical bills from providers other than himself." [ECF No. 38, 7 (citing *Sullivan*, 175 F.R.D. at 508)].

Wal-Mart improperly narrows *Sullivan's* scope. *Sullivan* specifically stated that hybrid fact/expert witnesses may testify "[t]o the extent that the source of the facts which form the basis for a treating physician's opinions derive from information learned during the actual treatment of the patient—as opposed to being subsequently supplied by an attorney involved in litigating a case . . . ." *Sullivan*, 175 F.R.D. at 501. Thus, a hybrid witness is not precluded from testifying as to other physicians' records, so long as such records were reviewed "during actual treatment of the patient." Paralleling this principle, the Sixth Circuit held "a report is not required when a treating physician testifies within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment." *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007), *as amended on denial of reh'g and reh'g en banc* (July 2, 2007).

Here, the majority of the medical bills were generated by Dr. Zooker's practice, OrthoMaryland, or were directly related to the surgery Dr. Zooker performed. Plaintiff contends

that Dr. Zooker "relied on the records and findings of Dr. Jay, Dr. Abate, Northwest, and Advanced Radiology in treating Plaintiff." [ECF No. 42, 13]. Evidencing Dr. Zooker's reliance, Plaintiff avers that, as the last physician in a chain of referrals, Dr. Zooker "relied on these records," including Advance Radiology's, in treating Plaintiff and in determining "preoperative care and clearance." *Id.* Finally, Plaintiff states that her "follow-up and physical therapy all took place in Dr. Zooker's office" – thus he is familiar with the "medical records and bills that Defendants seek" to exclude. *Id.* Because Plaintiff produced evidence that Dr. Zooker reviewed the records during his actual treatment of Plaintiff, Dr. Zooker may testify as to his opinions of prognosis, diagnosis and causation or what he otherwise "learned through actual treatment and from the plaintiff's records up to and including that treatment." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) (quoting *Fielden*, 482 F.3d at 871).

Dr. Zooker may also testify as to opinions derived from the medical records, reviewed during the actual course of treatment, pertaining to the reasonableness and fairness of the medical bills of other physicians. *Sullivan* makes clear that so long as "the source of the facts which form the basis for a treating physician's opinions derive from information learned during the actual treatment of the patient," the treating physician may opine on those facts. *Sullivan*, 175 F.R.D. at 501. Thus, as mentioned above, because Dr. Zooker's opinions would necessarily "derive from information learned during" his actual treatment of Plaintiff, he may also opine as to the reasonableness and fairness of the bills generated by his practice OrthoMaryland, generated by other practitioners for services ordered by his practice, or generated by other practitioners pertaining to the surgery he performed.

To avoid future disagreement as to the scope of this Order, counsel for the parties are ordered to meet and confer in-person within fourteen (14) days of the date of this Order.

7

Counsel should review each medical record and bill to determine whether it falls within the scope of Dr. Zooker's authorized testimony. If the parties remain unable to reach an agreement after their good faith efforts, any remaining dispute should be brought promptly to the attention of this Court, with copies of the exact medical records and bills at issue.

### C. The Testimony of Plaintiff's Twelve (12) Remaining Treating Physicians.

Pursuant to Federal Rule of Civil Procedure 37(c)(1), "a party [that] fails to . . . identify a witness as required by Rule 26(a) . . . is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Fourth Circuit, in *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, enumerated five (5) factors to consider whether a Rule 37(c)(1) violation was harmless or substantially justified:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose evidence.

318 F.3d 592, 596–97 (4th Cir. 2003). The non-disclosing party bears the burden of establishing that its Rule 26(a)(2) violation does not warrant preclusion. *Id.* at 597. Trial courts are conferred "broad discretion" in determining whether a party's nondisclosure was substantially justified or harmless and, importantly, need not expressly consider each *Southern States* factor. *Id.* at 596; *See Hoyle v. Freitliner LLC*, 650 F.3d 321, 330 (4th Cir. 2011). At issue is whether Plaintiff's untimely Rule 26(a)(2) disclosure prevents her twelve (12) remaining physicians from testifying. Because Plaintiff conceded that the untimely disclosure was not substantially justified, *See* Pl.'s Opp., [ECF No. 26, 9], the sole inquiry is whether the untimely disclosure was harmless.

While the *Southern States* factors supported rendering the untimely disclosure of Dr. Zooker harmless by "extending discovery" to permit Wal-Mart to depose Dr. Zooker and

8

"designate any additional rebuttal expert witnesses," [ECF No. 35, 6], rendering harmless the late disclosure of the remaining twelve (12) physicians under *Southern States* is problematic. Specifically, though extending discovery approximately 150 days for the deposition of Dr. Zooker and designation of any rebuttal expert witnesses was a "reasonable" solution, [ECF No. 35, 6], as Wal-Mart notes, the task of deposing and/or taking "advantage of other discovery methods to seek information regarding" the opinions of the remaining twelve (12) physicians after discovery has closed would pose a significant burden. Def.'s Mot., [ECF No. 25-3, 4].

Furthermore, looking directly at the latter two of the *Southern States* five (5) factors, namely, "the importance of the evidence" and "the nondisclosing party's explanation for its failure to disclose evidence," the untimely disclosure of these witnesses was not harmless. First, "the importance of the evidence" that each of the remaining physicians would provide is substantially reduced because, as discussed above, Dr. Zooker is able to testify about a significant portion of Plaintiff's treatment. As Plaintiff stated, "Dr. Zooker is familiar with [her] medical records and bills" as he "relied" upon them "in treating Plaintiff." Pl.'s Resp., [ECF No. 42, 13]. Furthermore, Plaintiff admits the reduced "importance of the evidence" by arguing in the alternative that only if "the Court rejects" Dr. Zooker's ability to testify should Plaintiff "be permitted to call [her other] treaters to testify." *Id.* at 14. In fact, "Plaintiff's counsel expressly informed Defendants that they did not anticipate needing to call any treaters except Dr. Zooker," provided he could testify to matters including Plaintiff's medical bills and records. *Id.* The decreased importance of the evidence, coupled with the fact that Plaintiff's "explanation for its failure to disclose evidence" was mere "inadverten[ce]," Pl.'s Mot. [ECF No. 26, 9], thus yields the conclusion under *Southern States* that the untimely disclosure was not harmless. Therefore, Federal Rule of Civil Procedure 37(c)(1) controls, and Plaintiff is barred from using the twelve

(12) remaining treating physicians "to supply evidence on a motion, at a hearing, or at a trial" for failing to make proper identifications as required by Rule 26(a). Under the standards set forth herein to govern Dr. Zooker's testimony, while some of Plaintiff's medical bills may be rendered inadmissible, it appears that the impact on Plaintiff's total alleged damages will not be substantial.

## II. CONCLUSION

For the reasons set forth above, Wal-Mart's Motion in Limine is GRANTED in part as to the testimony of the twelve (12) other treating physicians and DENIED in part as to: (a) Dr. Zooker's testimony and (b) Plaintiff's introduction of the medical records that Dr. Zooker reviewed during the course of Plaintiff's treatment. Conversely, Plaintiff's Motion for Leave to File Expert Witness Disclosure as to the remaining twelve (12) treating physicians is DENIED.

A separate order is filed herewith.

Dated: September 19, 2017

/s/
Stephanie A. Gallagher
United States Magistrate Judge